**SANTA MONICA AIRPORT ASSOCIATION, a California Corporation, National Business Aircraft Association, Inc., a New York not-for-profit corporation, General Aviation Manufacturers Association, a District of Columbia nonprofit corporation, Appellants/Cross-Appellees,**

v.

**CITY OF SANTA MONICA, a municipal corporation; Perry Scott; Donna Swink; John Bambrick; Christine Reed; Pieter Van Den Steenhoven; Ruth Yannatta; and William Jennings, Appellees/Cross-Appellants.**

Nos. 79–3550, 79–3589 and 79–3590.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 1980.

Decided April 23, 1981.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 23, 1981.

Robert Cleaves, Marina Del Rey, Cal., for Santa Monica Airport Ass'n.

Joseph A. Wheelock, Jr., Latham & Watkins, Los Angeles, Cal., Judith Richards Hope, Wald, Harkrader & Ross, Washington, D.C., for Nat. Business Aircraft Ass'n and General Aviation Manufacturers Ass'n.

Peter P. Steenland, Washington, D.C., for U.S.A.

Stanley E. Remelmeyer, Torrance, Cal., for City of Torrance.

Richard L. Knickerbocker, Jones, Knickerbocker & Fuller, Beverly Hills, Cal., Shane Stark, Santa Monica, Cal., for City of Santa Monica.

Sylvia Cano, Los Angeles, Cal., for State of Cal.

## AMENDED OPINION

Appeal from the United States District Court for the Central District of California.

* The Honorable Thomas F. Murphy, Senior United States District Judge for the Southern District of New York, sitting by designation.

Before CHAMBERS and GOODWIN, Circuit Judges, and MURPHY,* District Judge.

GOODWIN, Circuit Judge

A coalition of airport users challenged the City of Santa Monica's airport noise reduction ordinances in the district court. They appeal from the resulting judgment which denied most of the relief they were seeking.

After an increase in the use of jet aircraft and helicopters, the City of Santa Monica enacted several ordinances to reduce noise at the city-owned and operated airport. Section 10101 imposed a night curfew on takeoffs and landings; § 10111C prohibited certain low aircraft approaches on weekends; § 10105A2 prohibited helicopter flight training; § 10105B established a maximum single event noise exposure level (SENEL) of 100 dB.[1]; § 10105A1 prohibited jets at the airport and § 10105E provided a fine for any jet landings or takeoffs.

Appellants asserted the invalidity, on various grounds, of all of the above regulations. In a well-reasoned opinion, the district court found that the ordinances: (1) were not preempted by federal law; (2) did not violate grant agreements between the FAA and Santa Monica or breach any airport lease; (3) did not violate the Federal Aviation Act; and (4) that the first four ordinances did not violate the Equal Protection or Commerce Clauses. The district court did find, however, that the categorical ban on all jet aircraft and the penalty statute violated the Equal Protection and Commerce Clauses. We affirm.

■ Appellants contend that the ordinances in question are preempted by the comprehensive nature of federal control of civil aviation, and cite *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). In that case, the Supreme Court struck down on preemption grounds Burbank's jet curfew

1. dB is an abbreviation for decibels, a noise measurement.

ordinance as an unauthorized extension of state police power into the federal domain. But in doing so, the court expressly left open the question of "what limits, if any, apply to a municipality as a proprietor . . . ." should it decide to enact similar ordinances. 411 U.S. at 635–36 n.14, 93 S.Ct. at 1860–61 n.14.[2] The caveat may have been thought necessary in view of the Court's earlier decision in *Griggs v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585, *reh. denied*, 369 U.S. 857, 82 S.Ct. 931, 8 L.Ed.2d 16 (1962), which held municipal airport owners liable for Fifth Amendment "takings" of private property resulting from unreasonable airport use with respect to neighboring lands. Municipal airport owners needed some means of limiting their liability under *Griggs*. Environmental quality control ordinances by municipal airport proprietors are among those means.

Appellants argue that *Burbank's* footnote 14 did not endorse and should not be relied upon to create a municipal-proprietor exemption from federal preemption. They contend that a municipal-proprietor exemption would render *Burbank* meaningless.[3] Their argument, while overstated, has some superficial appeal. Nevertheless, the argument is not persuasive.

The Supreme Court in *Burbank* instructed us to " 'start with the assumption that the historic police powers of the states were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " 411 U.S. at 633, 93 S.Ct. at 1859, quoting from *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

The Second Circuit in *British Airways Bd. v. Port Authority of New York*, 558 F.2d 75 (2nd Cir.), *on remand*, 437 F.Supp. 804, *mod.*, 564 F.2d 1002 (1977), and the district court in *National Aviation v. City of Hayward, Cal.*, 418 F.Supp. 417 (N.D.Cal.1976), marshall impressive excerpts from the legislative history of the Federal Aviation Acts which show that, in light of *Griggs*, Congress was not preempting a municipal airport proprietor's right to enact noise ordi-

2. In footnote 14, the Court said:
"The letter from the Secretary of Transportation also expressed the view that 'the proposed legislation will not affect the rights of a State or local public agency, *as the proprietor of an airport*, from issuing regulations or establishing requirements as to the permissible level of noise which can be created by aircraft using the airport. Airport owners *acting as proprietors* can presently deny the use of their airports to aircraft on the basis of noise considerations so long as such exclusion is nondiscriminatory.' (Emphasis added.) This portion as well was quoted with approval in the Senate Report. *Ibid.*
"Appellants and the Solicitor General submit that this indicates that a municipality with jurisdiction over an airport has the power to impose a curfew on the airport, notwithstanding federal responsibility in the area. But, we are concerned here not with an ordinance imposed by the City of Burbank as 'proprietor' of the airport, but with the exercise of police power. While the Hollywood-Burbank Airport may be the only major airport which is privately owned, many airports are owned by one municipality yet physically located in another. For example, the principal airport serving Cincinnati is located in Kentucky. Thus, authority that a municipality may have as a landlord is not necessarily congruent with its police power.

We do not consider here what limits, if any, apply to a municipality as a proprietor." 411 U.S. at 635–36, n. 14, 93 S.Ct. at 1860–61 n.14.

3. In *Burbank*, the City of Burbank did not own the airport. Appellants claim that these peculiar ownership circumstances would limit *Burbank* merely to its special facts should we hold that ordinances enacted by municipal owners are not preempted by federal law. We do not think so. The impact of our holding will probably be less than appellants suggest. *Burbank* will continue to prohibit adjacent cities from trying to control noise at airports they do not own. *See, e. g., Allegheny Airlines v. Village of Cedarhurst*, 238 F.2d 812 (2nd Cir. 1956) (Cedarhurst preempted from passing noise ordinances regarding flights into New York City's airport); *American Airlines, Inc. v. City of Audubon Park*, 297 F.Supp. 207 (W.D.Ky.1968), *aff'd.* 407 F.2d 1306 (6th Cir.), *cert. denied*, 396 U.S. 845, 90 S.Ct. 78, 24 L.Ed.2d 95 (1969) (Audubon Park preempted from passing ordinance regulating noise at Louisville's airport); *American Airlines, Inc. v. Town of Hempstead*, 272 F.Supp. 226 (E.D.N.Y.1967), *aff'd.* 398 F.2d 369 (2nd Cir. 1968), *cert. denied*, 393 U.S. 1017, 89 S.Ct. 620, 21 L.Ed.2d 561 (1969), (Hempstead preempted from passing ordinances affecting noise at New York City's airport).

nances. *See* 558 F.2d at 83–84, 418 F.Supp. at 420–422.[4] *But see San Diego Etc. v. Super. Ct. for Cty. of San Diego,* 67 Cal. App.3d 361, 367, 136 Cal.Rptr. 557, 561 (4th Dist.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 184, 54 L.Ed.2d 132 (1977). Because Congressional intent not to preempt all regulation by municipal-proprietors is clear, the district court correctly concluded that these ordinances were not preempted.[5]

■ Appellants make two additional preemption arguments. They argue that even if there is a municipal proprietor exception for noise regulations, the 100 dB SENEL regulation is preempted.[6] First, they contend that Santa Monica's SENEL regulation is invalid because it frustrates the United States' exclusive control over aircraft flight and management. They argue that because this SENEL measures and limits the noise created by planes taking off and landing, it is preempted by federal supremacy.

■ The district court rejected this argument. It concluded that SENEL was not a regulation of airspace or aircraft in flight, but instead a reasonable regulation by an airport proprietor of noise made by aircraft. The court said:

"[A] municipal operator of an airport in my view can govern the noise levels of planes which have taken off from it both before and for a reasonable distance after the wheels have left the ground . . . ."

We agree.

We have held that the power of a municipal proprietor to regulate the use of its airport is not preempted by federal legislation. We further hold that the municipal proprietor exception allows the City to choose the SENEL method involved here, despite the SENEL's monitoring of noise created by planes as they are ascending or descending.

■ The legislative history shows that Congress intended that municipal proprietors enact reasonable regulations to establish acceptable noise levels for airfields and their environs. *See, e. g., British Airways Bd. v. Port Authority of New York,* 558 F.2d 75, 84–85 (2nd Cir. 1977) (and authorities cited therein). The legislative history does not suggest that Congress intended only to allow municipalities the option of excluding certain classes of aircraft. *See National Aviation v. City of Hayward, Cal.,* 418 F.Supp. 417, 421–24 (N.D.Cal.1976) (upholding a 112 dB SENEL ordinance by a municipal proprietor); *British Airways, supra,* 558 F.2d at 83–84; S.Rep. No. 92–1160, 92nd Cong., 2d Sess. (1972) (*reprinted* in (1972) U.S. Code Cong. & Ad. News 4655; S. Rep. No. 1353, 90th Cong., 2d Sess. (1968) (*reprinted* in (1968) U.S. Code Cong. & Ad. News 2688, 2694). The reasonable inference, not contradicted by the legislative history, is that Congress intended to allow a

---

**4.** Plaintiffs respond to this legislative history argument by saying that this argument was made to the *Burbank* court and rejected. This response is not accurate. The Supreme Court expressly reserved the question as to municipal proprietors. *Burbank,* 411 U.S. 635–36, n.14, 93 S.Ct. 1860–61, n.14.

**5.** Plaintiffs also argue that even if *Griggs* is used to justify a municipal-proprietor exemption to preemption, that exception should be limited to ordinances necessary to avoid *Griggs* liability. The problem with this argument is that it assumes that *Griggs* liability is limited to Fifth Amendment takings. Nothing in *Griggs* indicates such a limitation. Liability may well be imposed upon a municipality on theories other than inverse condemnation. The City of Santa Monica should be allowed to define the threshold of its liability, and to enact noise ordinances under the municipal-proprietor exemption if it has a rational belief that the ordinance will reduce the possibility of liability or enhance the quality of the city's human environment.

**6.** During the course of this litigation, Santa Monica amended its SENEL ordinance to prohibit noise in excess of 85 dB. (Santa Monica is considering reenacting the 100 dB ordinance, however.)

On rehearing, it was urged that the preemption arguments apply and must be addressed, regardless of which SENEL ordinance applies. Accordingly, we examined the merits of the 100 dB SENEL preemption arguments even though the final text of the ordinance is not settled. *See Brockington v. Rhodes,* 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed.2d 209 (1969) (per curiam).

municipality flexibility in fashioning its noise regulations. *See Hayward, supra*, 418 F.Supp. at 425, n.13.

There was evidence that the City's SENEL system was one of the most direct, effective and least costly methods of monitoring and regulating noise. This SENEL regulates that noise for which the City is liable. Thus, we hold that in this instance, the SENEL method used by the City does not render its otherwise proper noise regulations unlawful.

The appellants have also argued that "preemption as applied" invalidates the 100 dB SENEL ordinance. The district court summarized this claim as follows:

"Plaintiffs say that because the SENEL system induces such [unsafe] practices within the airspace and as a part of flight [by causing pilots to attempt to 'beat the box'], it amounts to a local regulation of airspace and flight which matters are within the exclusive domain of the federal government. This is essentially what is meant by the claim of 'preemption as applied.'" *Santa Monica Airport Ass'n v. City of Santa Monica*, 481 F.Supp. 927, 941 (C.D.Cal.1979), *aff'd.*, 647 F.2d 3 (9th Cir. 1981).

The district court rejected this argument. It noted that the SENEL ordinance did not regulate airspace or flight. It reasoned that the tendency to violate a certain law does not render the law improper or illegal. These arguments are sound. Appellants have cited no authority which convinces us that the district court was incorrect. The principles of comity and federalism militate against our invalidating a state or local regulation unless it is written in unlawful terms, or because, on its face, it is preempted. We have no warrant to strike down an ordinance merely because the public reacts to it in a manner inconsistent with federal law.

Accordingly, we reject the "preemption as applied" argument.

Other points briefed and argued by the parties were fully and correctly answered in the district court's opinion.[7]

Affirmed.

---

**7.** 481 F.Supp. 927 (C.D.Cal.1979).